IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PAMELA NAGEL, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 14 C 8060 ) |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | ) Magistrate Judge Finnegan ) ) |
| Defendant. | ) ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Pamela Nagel seeks to overturn the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 416. The parties consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c), and Plaintiff filed a motion for summary judgment. (Doc. 8). After careful review of the record, the Court grants Plaintiff's motion and remands the case for further proceedings.

## PROCEDURAL HISTORY

Plaintiff applied for DIB on November 15, 2011. In her application, she alleged disability on the basis of spinal stenosis, polyarthritis, depression, digestive problems, bronchitis, and allergies beginning on January 2, 2007, approximately four years before December 31, 2011, the date upon which she was last insured for DIB (the "DLI). (R. 21, 154-55, 181). The Social Security Administration denied Plaintiff's application initially on February 17, 2012, and again upon reconsideration on May 15, 2012. (R. 72-73). She then filed a timely request for a hearing and appeared before

Administrative Law Judge Joel G. Fina (the "ALJ") on May 15, 2013. (R. 34-71). The ALJ heard testimony from Plaintiff, who was represented by counsel, a vocational expert ("VE"), and Sheldon J. Slodki, M.D., an independent medical expert. On July 12, 2013, the ALJ found that Plaintiff was capable of performing her past relevant work. Therefore, the ALJ found that Plaintiff was not disabled at any time from the alleged onset date through her DLI and denied her application for benefits. (R. 19-26).

On October 14, 2015, Plaintiff filed a complaint for judicial review. In her motion for summary judgment, Plaintiff identifies three bases upon which this Court should remand the decision to the Commissioner. First, Plaintiff argues that the ALJ did not assign proper weight to the several medical opinions of record, particularly with respect to the opinion of her treating physiatrist. Second, she urges that the ALJ erred by discrediting her subjective pain allegations without considering and discussing the regulatory credibility factors. Finally, she contends that the ALJ erred by overlooking certain hearing testimony of the independent medical expert.

## **FACTUAL BACKGROUND**

Plaintiff was born on February 6, 1958, and was fifty-five years of age at the time of the ALJ's decision. (R. 154). She lives with her husband and youngest daughter, has completed some college course work, and prior to her application for DIB, she worked as a loan processor and a personal banker. (R. 46-48). She left the work force on January 2, 2007 when she resigned from the bank at which she worked. As Plaintiff explained at the hearing, she experienced increasing difficulty concentrating in her loan processing position because she "couldn't sit or stand or do the job anymore due to the pain." (R. 47). The bank decided to "relocate [Plaintiff] to a different position, . . ." a

2

"[t]eller position, which required a lot of standing" because of Plaintiff's "physical condition and the fact that [she] was missing work[,]" which occurred "two or three days every week or other week." (*Id.*). Plaintiff resigned rather than transfer positions because she believed she "couldn't handle the [teller] position" due to the amount of standing. (R. 47-48).

### A. Medical History

The earliest medical evidence in the record dates to 2006, prior to Plaintiff's end of employment. The record reflects that, between 2006 and 2012, she saw her primary care physician and other specialists for various complaints that included allergies, asthma, and digestive issues. (R. 299-304, 347-55). During some of the primary care visits, Plaintiff reported knee pain, and a medical imaging report dated January 9, 2006 documented some mild degenerative changes. (R. 275-78). Some years later, Plaintiff injured her wrist during a fall, and an x-ray dated April 21, 2010 documented a fracture of Plaintiff's right wrist, for which she was given a brace and pain medication. (R. 294, 364-65). Although Plaintiff's employment ended in 2007 and she lost healthcare insurance at that time, she continued seeing at least some of her medical providers. Treatment notes from this period document some complaints of back pain (R. 304), but the record does not contain medical records related to mental health, back, or arthritis-related treatment.

Six weeks before her date last insured, Plaintiff filed her application for DIB on November 15, 2011. Several days later, on November 21, 2011, she saw physiatrist Lawrence Frank, M.D. with complaints of low back pain, leg pain, and wrist pain. (R. 305). Dr. Frank's notes indicate that Plaintiff told him that she had applied for DIB and

3

was seeing him because her attorneys "recommended a specialist." (*Id.*). Although the visit was an "initial evaluation," Dr. Frank recalled that Plaintiff had previously seen him, the last visit occurring in 2004. (*Id.*). In the "past medical history" portion of his treatment note, he summarized Plaintiff's self-reported medical history, which included depression, anxiety, osteoarthritis, osteoporosis, two lumbar surgeries, one neck surgery, and epidural injections for pain management. (*Id.*; *see also* R. 342-44). In his physical examination, Dr. Frank observed that Plaintiff had "painful limited lumbar extension" and was able to stoop forward only by ten degrees. (R. 305). He further stated that, "[n]eurologically, [Plaintiff was] intact in the lower extremities to light touch sensation, reflexes, and strength." (*Id.*). He observed a "relatively good hip range of motion." (*Id.*). Dr. Frank diagnosed her with osteoarthritis of the back and legs, and opined that medical imaging was not needed to make this diagnosis because it "is self-evident" and Plaintiff lacked healthcare insurance. (R. 306). He prescribed Naprosyn (an anti-inflammatory) and doxepin (an antidepressant), and asked her to return in four to six weeks. (*Id.*).

At the December 20, 2011 follow-up appointment, Dr. Frank found unchanged Plaintiff's physical condition, and he newly prescribed Mobic (an anti-inflammatory) and doubled the doxepin dosage. (R. 334). On February 2, 2012, Plaintiff returned to Dr. Frank and reported that the Mobic was ineffective. (R. 394). She also stated that the Naprosyn, while helpful for pain, "seemed to upset her stomach." (*Id.*). Dr. Frank found no changes during the physical exam, and he again increased her dosage of doxepin, prescribed an enteric-coated version of Naprosyn (to ameliorate the stomach problems), and asked her to return in six weeks. (*Id.*).

On February 9, 2012, non-examining psychiatrist Glen Pittman, M.D., completed a consulting opinion for the State of Illinois Bureau of Disability Determination Services ("DDS"). (R. 368). He opined that there was "insufficient evidence" of a psychiatric impairment in the above-described records. (R. 368, 380). Days later, on February 14, 2012, Young-Ja Kim, M.D., a non-examining consulting physician, also completed an opinion for DDS. (R. 389). Relying on the evidence in the record, Dr. Kim opined that Plaintiff's allegations of pain, including her claim that she cannot sit or stand without pain and is not able to sleep longer than two consecutive hours due to pain, were only partially credible. (R. 387). Dr. Kim did find, however, that Plaintiff has certain exertional limitations: she could occasionally lift or carry twenty pounds; frequently lift or carry ten pounds; stand or walk for six hours in an eight-hour work day; and sit for six hours in an eight-hour work day. (R. 383).

Plaintiff next visited Dr. Frank on March 15, 2012. She reported some improvement but rated the pain as a six out of ten. (R. 400). Plaintiff told Dr. Frank that standing and walking exacerbated her back pain, and Dr. Frank found that extension, rotation, and side-bending produced pain during the physical examination. (R. 400-01). He also found a limited range of motion during extension, with normal reflexes, unremarkable gait, a normal straight leg raise test, and normal strength. (R. 401). He diagnosed Plaintiff with lumbosacral spondylosis without myelopathy (degenerative changes in the spine without neurologic deficits), osteoarthritis at multiple (unspecified) locations, anxiety disorder, and depressive disorder. (R. 402). He refilled her medications and instructed her to follow up in three months. (*Id.*).

On May 10, 2012 and May 14, 2012, DDS obtained additional consulting opinions from non-examining psychologist Donald Cochran, Ph.D. and non-examining physician Vidya Madala, M.D. (R. 404-06, 408-10). Each doctor affirmed the findings of the prior consulting opinions (those of Dr. Pittman and Dr. Kim), notwithstanding Plaintiff's allegation of worsening symptoms. (R. 406, 410). Each doctor indicated that he or she considered additional evidence, including treatment records from Dr. Frank. (*Id.*).

On June 18, 2012, Plaintiff returned to Dr. Frank and reported a marked worsening of her symptoms. (R. 418). She stated that the medication was not helpful, and that the onset of the pain was sudden – pain that she rated as eight out of ten. (*Id.*). Her physical examination was unchanged from the March visit. (*See* R. 419). Dr. Frank refilled her medications, newly prescribed Norco (a pain reliever), and asked her to return in three months. (R. 420). When she did so on October 15, 2012, she again described worsening of her pain. (R. 412). She reported poor sleep in the past few weeks, but told Dr. Frank that the medication had been helpful. (*Id.*). Her subjective pain rating remained eight out of ten. (*Id.*). Dr. Frank refilled her prescriptions and noted that she would be a candidate for facet injections (an invasive procedure for pain relief) or possibly radiofrequency neurotomy (likewise, an invasive procedure that disables spinal nerves to prevent transmission of pain signals), but she had "no insurance." (R. 414). He directed Plaintiff to follow up in three months, and at her next appointment, on January 14, 2013, Plaintiff reported no change in her symptoms. (R. 415). The medications were helping "a little," but the pain ratings and physical exam

findings were unchanged. (R. 415, 417). Dr. Frank refilled her prescriptions and instructed her to return in three months. (R. 417).

Dr. Frank completed a Pain Report on May 5, 2013 at the request of Plaintiff's attorney. (R. 448-49). He stated that he had been seeing Plaintiff for six-to-seven years, and that she had reported pain "mostly [in her] low back but [also] at 4 extremities and trunk." (R. 448). Based upon his clinical observations and diagnostic impressions, Dr. Frank opined that standing and walking were the primary activities in which Plaintiff experienced her chronic and acute pain, and medication relieved the pain only temporarily. (R. 448-49). Dr. Frank opined that pain markedly impacted her ability to concentrate, and based on his observations and treatment, he did not believe she was able "to function in a competitive work setting . . . on an eight hour per day, five days per week basis[.]" (R. 449). In addition, Dr. Frank predicted that working would likely increase the amount of pain Plaintiff experiences. (*Id.*).

## B. The Administrative Hearing

Plaintiff appeared at a hearing before the ALJ on May 15, 2013, at which both she and Dr. Slodki testified. Dr. Slodki is board certified in internal medicine and appeared as a neutral medical expert. (R. 38). Having had an opportunity to review the record in this case, Dr. Slodki opined on the nature and extent of Plaintiff's medical impairments. (*Id.*). In his view, Plaintiff's back pain was a significant impairment between the alleged onset date and the DLI of December 31, 2011. When asked by the ALJ about imaging studies of Plaintiff's back during the relevant period, Dr. Slodki responded that none were present in the record, but he did acknowledge that Plaintiff had pain in her back, legs, and wrist during this time period. (R. 39-40). For this

7

reason, he agreed with the opinions of Dr. Kim and Dr. Madala that Plaintiff had some environmental and postural limitations. (R. 41). He also noted that Dr. Frank had offered a medical opinion and that this was part of the record, but the ALJ did not ask him to dispute or opine on the opinion. (*See* R. 41). Dr. Slodki also testified, in response to a question by Plaintiff's attorney, that Plaintiff's level of pain "could" be expected to interfere with her ability to concentrate and sustain tasks, but whether that was so would depend both "on the individual" and "on the impact." (R. 44).

**C.      The ALJ's Decision**

In his July 12, 2013 decision, the ALJ determined that Plaintiff has osteoarthritis, lumbosacral spondylosis without myelopathy, degenerative joint disease of the bilateral knee, obesity, and asthma, each a severe impairment under the Social Security regulations. (R. 21). The ALJ next evaluated whether Plaintiff's severe impairments met or medically equaled the severity of the impairments listed in the appendices to Subpart P of 20 C.F.R. Part 404, and he found that none of the impairments, alone or in combination, met the criteria of the relevant listings. (R. 21-22). Thereafter, the ALJ found that Plaintiff's residual functional capacity ("RFC") allowed her to perform light work with the following additional restrictions: she could lift up to twenty pounds only occasionally; lift and carry ten pounds frequently; stand or walk for approximately six hours in an eight-hour day and sit for approximately six hours in an eight-hour work day, with normal breaks; only occasionally climb ladders, ropes, or scaffolds; frequently balance, stoop, and crouch; and she must avoid concentrated exposure to respiratory irritants (such as "fumes, odors, dusts, and gases") and exposure to poorly ventilated areas. (R. 22).

8

In making this RFC determination, the ALJ reviewed and considered Plaintiff's subjective complaints and allegations, her daily activities, and medical records, including those from Dr. Frank, the consulting doctors, and the testimony of Dr. Slodki. (R. 24-25). The ALJ accepted the opinion of Dr. Pittman as to the insufficiency of evidence of psychological impairments, and also accepted the testimony of Dr. Slodki and the RFC findings of Dr. Kim and Dr. Madala. (R. 24-25). The ALJ made no mention of Dr. Frank's opinion. (*See id.*). The ALJ also found not credible Plaintiff's allegations as to the severity and persistence of her symptoms. (R. 24).

Relying on the testimony of the VE, the ALJ determined at step four that Plaintiff could return to her past relevant work as a loan processor and as a "customer service representative," a position the VE likened to the personal banker position. (R. 25). Accordingly, the ALJ concluded that Plaintiff was not disabled at any time between January 2, 2007, the alleged onset date, and December 31, 2011, the DLI, and thus denied her application for DIB. (R. 25-26).

## DISCUSSION

### A. Standard of Review

Judicial review of the Commissioner's final decision is authorized by section 405(g) of the Social Security Act. *See* 42 U.S.C. § 405(g). In reviewing the decision, the Court may not engage in its own analysis of whether Plaintiff is severely impaired as defined by the Social Security Regulations. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004) (citation omitted). Nor may it "displace the ALJ's judgment by reconsidering facts or evidence or making credibility determinations." *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010) (quoting *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007)). The

Court's task is to determine whether the ALJ's decision is supported by substantial evidence, which is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011) (quoting *Skinner*, 478 F.3d at 841).

In making this determination, the court must "look to whether the ALJ built an 'accurate and logical bridge' from the evidence to [his] conclusion that the claimant is not disabled." *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009) (quoting *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008)). Where the Commissioner's decision "'lacks evidentiary support or is so poorly articulated as to prevent meaningful review,' a remand is required." *Hopgood ex rel. L.G. v. Astrue*, 578 F.3d 696, 698 (7th Cir. 2009) (quoting *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002)). Similarly, where the Commissioner's decision "lacks adequate discussion of the issues," Seventh Circuit precedent requires remand. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009) (citing cases).

## B. Five-Step Inquiry

To recover DIB under Title II of the Social Security Act, a claimant must establish that she is disabled within the meaning of the Act. *Keener v. Astrue*, No. 06-CV-0928-MJR, 2008 WL 687132, at *1 (S.D. Ill. Mar. 10, 2008).[1] A claimant is disabled if she is unable to perform "any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to . . . last for a continuous period of not less than 12 months." *Crawford v. Astrue*, 633 F. Supp. 2d 618, 630 (N.D. Ill. 2009) (quoting 42 U.S.C. § 423(d)(1)(A)). In determining whether a claimant suffers

---

[1] The regulations governing the determination of disability for DIB are found at 20 C.F.R. § 404.1501 *et seq.*

from a disability, the ALJ conducts a standard five-step inquiry: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment severe? (3) Does the impairment meet or equal one of a list of specific impairments enumerated in the regulations? (4) Is the claimant unable to perform her former occupation? and (5) Is the claimant unable to perform any other work?  *See* 20 C.F.R. §§ 404.1520; *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

**C.     Analysis**

Plaintiff seeks remand on the basis of three alleged errors: (1) the ALJ's flawed weighting of the medical opinions; (2) his improper credibility determination; and (3) his failure to consider Dr. Slodki's opinion about the effect of pain on her concentration ability.  The Court discusses each in turn.

**1.     Weighting of Medical Opinions**

Plaintiff urges that the ALJ erred by ignoring the opinion of her treating physiatrist, Dr. Frank, and relatedly, by accepting the opinion of Dr. Slodki without articulating reasons for doing so.  (Doc. 8, at 6-8, 8-9).  The Social Security regulations govern an ALJ's weighting of medical opinions.  20 C.F.R. § 404.1527(c).  A treating source opinion is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record.  20 C.F.R. § 404.1527(c)(2); *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011); *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010).  Even if a treating doctor's opinion is not given controlling weight, an ALJ must determine what weight the opinion merits in light of the regulatory factors.  *Scott*, 647 F.3d at 740; *Campbell*, 627 F.3d at 308.  The analysis is a "two-step process" in which

the ALJ first determines in light of the factors whether the opinion deserves controlling weight, and should it not, the ALJ then assigns a weight in light of those same factors. *Duran v. Colvin*, No. 15 C 50316, 2015 WL 4640877, at *8 (N.D. Ill. Aug. 4, 2015).[2] In making both determinations, the ALJ considers: (1) the length, nature, and extent of the treatment relationship; (2) the frequency of examination; (3) the doctor's specialty; (4) the types of tests performed; and (5) the consistency and support for the doctor's opinion. 20 C.F.R. § 404.1527(c)(2)-(5); *see also Simila*, 573 F.3d at 515. These same factors apply to the ALJ's consideration and weighting of medical opinions from non-treating and non-examining sources. 20 C.F.R. § 404.1527(e); *see Cirelli v. Astrue*, 751 F. Supp. 2d 991, 1006-07 (N.D. Ill. 2010). At bottom, the ALJ must offer "good reasons" for the weight he assigns. *Scott*, 647 F.3d at 739; *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2010).

Because the ALJ did not consider and assign weight to Dr. Frank's opinion (specifically, the several limitations he suggested in the May 5, 2013 "Pain Report"), the ALJ erred and remand is required. The ALJ's decision, as described, has no discussion of Dr. Frank's opinion and as a result, the ALJ did not articulate any legally sufficient reasons for disregarding it. ALJs are obligated to consider each of the medical opinions in the record, *see* 20 C.F.R. § 404.1527(b) ("we will always consider the medical opinions in your case record . . ."), and the ALJ's decision provides no indication that he met this requirement. Defendant suggests that, although the ALJ "did not specifically

---

[2] There is an apparent conflict about whether the ALJ make these determinations in two separate steps, or whether a single, conflated discussion suffices. *See Duran*, 2015 WL 4640877, at *9-10 (explaining the two approaches and their bases in Seventh Circuit authority). The Court notes the conflicting authority but need not adopt an approach because, under either, the ALJ erred in his failure to evaluate Dr. Frank's opinion at all, and in his acceptance of Dr. Slodki's opinion without a discussion of the regulatory factors.

discuss" Dr. Frank's opinion, there was no error because the ALJ discussed several of Dr. Frank's treatment notes and "was aware of [Dr. Frank's] completed form." (Doc. 17, at 4). Defendant's view is unpersuasive, as it is speculative the ALJ was "aware" of the opinion simply because he discussed Dr. Frank's treatment notes. Moreover, the ALJ's "awareness" of Dr. Frank's opinion does not relieve him of the obligation to evaluate it under the applicable regulatory factors and thereafter afford it weight for the "good reasons" he provides in writing.

Notwithstanding the error, Defendant contends that the Court should affirm the ALJ's decision because the error was harmless. To recover DIB, a plaintiff must demonstrate that she became or was disabled between the alleged onset date and the DLI – here, between January 2, 2007 and December 31, 2011. *See Parker v. Astrue*, 597 F.3d 920, 924 (7th Cir. 2010) (explaining the requirement of disability during the relevant period for DIB). Dr. Frank completed the Pain Report in May 2013, and Defendant points out that Dr. Frank "did not indicate that his opinion applied to Plaintiff's condition prior to her date last insured." (Doc. 17, at 5). Accordingly, in Defendant's view, the Pain Report is entirely irrelevant to the question before the ALJ: whether Plaintiff was disabled between the alleged onset date and the DLI.

The harmless error argument is unavailing. An error is harmless only when the Court is "convinced that the ALJ will reach the same result" upon remand. *McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2012). In this case, the same result is not certain upon remand. As the Seventh Circuit has explained, evidence that post-dates the DLI may suggest a claimant is currently disabled, and it may also suggest disability during the relevant period; an ALJ may reasonably conclude that such evidence does or does

not support the application for DIB. *See Eichstadt v. Astrue*, 537 F.3d 663, 666 (7th Cir. 2008); *Mackay v. Astrue*, No. 11 C 283, 2011 WL 6753848, at *13 (N.D. Ill. Dec. 22, 2011). In either case, remand may be appropriate for consideration of a post-DLI medical opinion. *See Estok v. Apfel*, 152 F.3d 636, 639-40 (7th Cir. 1998). Dr. Frank's opinion does not state, as Defendant correctly notes, that it pertains to Plaintiff's condition prior to the DLI, but it also does not state that it pertains only to dates thereafter. Simply put, the opinion is silent on the matter, but even in this silence (without clarification from Dr. Frank), the ALJ could view the opinion as evidence of a disability prior to the DLI. It is not for this Court to speculate about the ALJ's view or to resolve the issue in the first instance. Because the ALJ's resolution of this question, along with his analysis of the opinion under the regulatory factors, may well lead to an award of benefits, the error is not harmless and the remand is required.

Additionally, the Court agrees that the ALJ failed to provide legally sufficient reasons for accepting Dr. Slodki's opinion regarding Plaintiff's residual functional capacity. The ALJ wrote: "The testimony of the medical expert, Dr. Slodki[,] and the Disability Determination Service analysis [Dr. Kim and Dr. Madala] for a light residual functional capacity are accepted." (R. 24) (internal citations omitted). The ALJ had just concluded his discussion of the medical evidence, and continued on to discuss Plaintiff's daily activities, but he articulated no view as to how the medical evidence or activities supported Dr. Slodki's opinion, and relatedly, his own decision to rely upon the opinion. As observed, the ALJ must state "good reasons" for weighting an opinion; his stating that an opinion is "accepted" without explaining why fails to communicate any reason, let alone a "good" one. For the same reason, the ALJ also failed to provide

14

legally sufficient reasons for his weighting of the consulting opinions. Although Plaintiff raised the argument only with respect to Dr. Slodki, the ALJ's decision reflects that he also accepted, without stating why, the opinions of Dr. Kim, Dr. Madala, and Dr. Pittman (and presumably Dr. Cochran as well, although the opinion makes no mention at all of his report). An express discussion of the factors was of heightened importance in this case with respect to the opinions of the independent and DDS physicians (Dr. Slodki, Dr. Madala, and Dr. Kim), as the record does not reflect that any of them are specialists like Dr. Frank, who as a physiatrist is an expert "in diagnosing and treating acute and chronic pain and musculoskeletal disorders." *White v. Barnhart*, 415 F.3d 654, 660 (7th Cir. 2005). Although their lack of specialization alone does not compel the ALJ to give their opinions lesser weight, it is a factor that the ALJ should have considered and explained when assessing and weighting the opinions. On remand, the ALJ should evaluate and weight each of the medical opinions in light of the regulatory factors.

### 2. Credibility Determination

Next, Plaintiff argues that the ALJ's credibility determination is flawed because the ALJ cited no reasons for discrediting her subjective allegations of pain. (Doc. 8, at 9-10). An ALJ "must justify the credibility finding with specific reasons supported by the record[.]" *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009). The regulations require that an ALJ consider objective medical evidence, the claimant's daily activities, allegations of pain, aggravating factors, course of treatment, and functional limitations when assessing credibility. 20 C.F.R. § 404.1529(c); *Simila*, 573 F.3d at 517 (citing *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006)). Usually, a court gives deference to the credibility determination, for an ALJ "is in the best position to evaluate

credibility." *Simila*, 573 F.3d at 517. However, an ALJ's "failure to adequately explain his or her credibility finding . . . is grounds for reversal." *Minnick v. Colvin*, 775 F.3d 929, 937 (7th Cir. 2015).

In this case, the Court agrees with Plaintiff that the ALJ erred. In his decision, the ALJ wrote: "claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms [of pain]; however, the claimant's statements concerning the intensity, persistence[,] and limiting effects of these symptoms are not entirely credible *for the reasons explained in this decision*." (R. 23) (emphasis added). The ALJ went on to discuss and analyze the medical evidence, but not once did he articulate, cite, or explain what were those reasons (which might have been any of the reasons with which federal courts have become familiar in reviewing Social Security appeals, such as inconsistency of allegations with the plaintiff's daily activities, lack of objective support, conservative treatment, and work history). In this silence, the ALJ's decision leaves the Court to infer and speculate as to what were his bases for finding Plaintiff not credible, and this "failure to adequately explain" constitutes error. *Minnick*, 775 F.3d at 937.

Defendant urges that the ALJ "adequately explained his decision" because the ALJ stated that he made this determination consistent with the requirements of Social Security Regulation 96-7p. His decision, she argues, is owed deference so long as it is not "patently wrong." (Doc. 17, at 8-9). Plaintiff retorts that this oft-used phrase is "useless boilerplate," quoting *Shauger v. Astrue*, 675 F.3d 690 (7th Cir. 2012), and the language does not satisfy the ALJ's obligation to support his finding with "specific reasons." (Doc. 8, at 10). The Court agrees. This is not an instance where the Court

credibility." *Simila*, 573 F.3d at 517. However, an ALJ's "failure to adequately explain his or her credibility finding . . . is grounds for reversal." *Minnick v. Colvin*, 775 F.3d 929, 937 (7th Cir. 2015).

In this case, the Court agrees with Plaintiff that the ALJ erred. In his decision, the ALJ wrote: "claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms [of pain]; however, the claimant's statements concerning the intensity, persistence[,] and limiting effects of these symptoms are not entirely credible *for the reasons explained in this decision*." (R. 23) (emphasis added). The ALJ went on to discuss and analyze the medical evidence, but not once did he articulate, cite, or explain what were those reasons (which might have been any of the reasons with which federal courts have become familiar in reviewing Social Security appeals, such as inconsistency of allegations with the plaintiff's daily activities, lack of objective support, conservative treatment, and work history). In this silence, the ALJ's decision leaves the Court to infer and speculate as to what were his bases for finding Plaintiff not credible, and this "failure to adequately explain" constitutes error. *Minnick*, 775 F.3d at 937.

Defendant urges that the ALJ "adequately explained his decision" because the ALJ stated that he made this determination consistent with the requirements of Social Security Regulation 96-7p. His decision, she argues, is owed deference so long as it is not "patently wrong." (Doc. 17, at 8-9). Plaintiff retorts that this oft-used phrase is "useless boilerplate," quoting *Shauger v. Astrue*, 675 F.3d 690 (7th Cir. 2012), and the language does not satisfy the ALJ's obligation to support his finding with "specific reasons." (Doc. 8, at 10). The Court agrees. This is not an instance where the Court

credibility." *Simila*, 573 F.3d at 517. However, an ALJ's "failure to adequately explain his or her credibility finding . . . is grounds for reversal." *Minnick v. Colvin*, 775 F.3d 929, 937 (7th Cir. 2015).

In this case, the Court agrees with Plaintiff that the ALJ erred. In his decision, the ALJ wrote: "claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms [of pain]; however, the claimant's statements concerning the intensity, persistence[,] and limiting effects of these symptoms are not entirely credible *for the reasons explained in this decision*." (R. 23) (emphasis added). The ALJ went on to discuss and analyze the medical evidence, but not once did he articulate, cite, or explain what were those reasons (which might have been any of the reasons with which federal courts have become familiar in reviewing Social Security appeals, such as inconsistency of allegations with the plaintiff's daily activities, lack of objective support, conservative treatment, and work history). In this silence, the ALJ's decision leaves the Court to infer and speculate as to what were his bases for finding Plaintiff not credible, and this "failure to adequately explain" constitutes error. *Minnick*, 775 F.3d at 937.

Defendant urges that the ALJ "adequately explained his decision" because the ALJ stated that he made this determination consistent with the requirements of Social Security Regulation 96-7p. His decision, she argues, is owed deference so long as it is not "patently wrong." (Doc. 17, at 8-9). Plaintiff retorts that this oft-used phrase is "useless boilerplate," quoting *Shauger v. Astrue*, 675 F.3d 690 (7th Cir. 2012), and the language does not satisfy the ALJ's obligation to support his finding with "specific reasons." (Doc. 8, at 10). The Court agrees. This is not an instance where the Court

owes deference to an ALJ's view of particular facts, such as his conclusions about a plaintiff's work history. There, even were the Court to disagree with the ALJ's reasoning, the determination must stand so long as it is not "patently wrong." *Simila*, 573 F.3d at 517. Here, in contrast, the ALJ omitted discussion of the regulatory credibility factors. He did not discuss any facts within context of a particular factor, articulate a conclusion about those facts, and explain how that conclusion impacted Plaintiff's credibility. Thus, his decision precludes the Court from reviewing, even minimally, the legal sufficiency of his reasons. As the *Villano* court reasoned, an ALJ's mere discussion of facts relevant to the credibility determination, such as daily activities, cannot support a credibility finding when the ALJ does not "explain whether [the plaintiff's] daily activities were consistent or inconsistent with the pain and limitations she claimed." 556 F.3d at 562.

Even reading the decision in a way most favorable to Defendant, and thereby construing the credibility finding to rely on a discrepancy between Plaintiff's allegations and the objective evidence (more accurately, the lack thereof), the reason is not enough. The *Villano* court held that "a lack of medical evidence alone is an insufficient reason to discredit testimony." *Id.* at 562-63. Further, the lack of objective evidence may have a reasonable explanation: Plaintiff's lack of medical insurance. Indeed, Dr. Frank's Pain Report suggested that Plaintiff is in need of medical care but cannot obtain it due to her circumstances (R. 449), so this may explain why the record lacks corroborating objective evidence. It is for the ALJ to consider, weigh, and resolve such an issue in the first instance, and the regulations require him to do so. On remand, the

ALJ should reevaluate the credibility of Plaintiff's allegations in light of the regulatory factors and offer "specific reasons" for his credibility finding. *Terry*, 550 F.3d at 447.

### 3. Dr. Slodki's Testimony

Finally, Plaintiff contends that the ALJ ignored Dr. Slodki's statement that her impairments "could be expected to produce some problems with her ability to concentrate and sustain tasks." (Doc. 8, at 8). "[A]n ALJ need not discuss every piece of evidence in the record, [but] the ALJ may not ignore an entire line of evidence that is contrary to the ruling." *Terry*, 550 F.3d at 447. In his opinion, the ALJ made no mention of Dr. Slodki's suggestion, and Plaintiff urges this omission was error. In Plaintiff's view, because she testified at the hearing that the bank planned to transfer her out of her loan processing position because of her "pain and inability to concentrate" (which effectively led to the end of her employment), and also because Dr. Frank opined that her pain markedly impacted her ability to sustain concentration and attention, this line of evidence was a "significant" one that required discussion. (Doc. 8, at 8 (citing R. 47, 449)).

The Court rejects this claim of error because it mischaracterizes Dr. Slodki's testimony. At the hearing, Plaintiff's attorney asked: "So the level of pain she's experiencing[,] is there – could that be expected to produce some problems with her ability to concentrate and sustain tasks?" (R. 44). Dr. Slodki responded: "Could. Depends on the individual. Depends on the impact." (*Id.*). Immediately prior, Dr. Slodki testified that Plaintiff's pain lacked objective support, and he took care to note that "the back problem" did not appear to be a central complaint in her "long office record in which she goes to the office frequently . . ." for digestive, asthma, and allergy issues

18

between January 2, 2007 and December 31, 2011. (R. 42). He subsequently opined that the existence of her pain was a credibility issue. (R. 43). Colored by that context, what Dr. Slodki's response indicates is that the pain Plaintiff alleged could produce concentration problems for some individuals, depending on its particular impact. His phrasing rendered the response not one about Plaintiff, but instead a generalized non-answer; he might as well have said, "it's possible." The statement is not, as Plaintiff suggests, Dr. Slodki's opinion about her own limitations due to pain, which undercuts the argument that the ALJ ignored a significant line of evidence. To the extent the ALJ erred in not considering the impact of the pain on Plaintiff's concentration and attention abilities, such error arose in his failure to consider Dr. Frank's Pain Report (which contained, as Plaintiff observes, an opinion about that matter). This will be addressed by the ALJ when he evaluates Dr. Frank's opinion on remand.

## **CONCLUSION**

For the reasons stated above, Plaintiff's Motion for Summary Judgment (Doc. 7) is granted. Pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision is reversed, and this case is remanded to the Social Security Administration for further proceedings consistent with this Opinion.

ENTER:

Dated: January 22, 2016

*Sheila Finnegan*
SHEILA FINNEGAN
United States Magistrate Judge